IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Cody Christian Likens,<br><br>　　　　　Defendant. | No.　　　CR-25-01354-001-TUC-AMM (MSA)<br><br>**ORDER** |

On December 19, 2025, Magistrate Judge Maria S. Aguilera issued a Report and Recommendation ("R&R") recommending the Court deny self-represented Defendant Cody Christian Likens' Motion to Suppress.[1] (Doc. 66.) Likens filed objections to the R&R, and the Government filed a response.[2] (Docs. 72, 78.) For the reasons discussed below, the Court will overrule Likens' objections and adopt the R&R.

**I.　　Background**

On October 3, 2024, Likens was stopped for driving on a suspended license. (Doc. 45 at 14, 17–18.) Specifically, that evening around 7:00 p.m., Officer Kristofer Brandstrom of the Oro Valley Police Department ("OVPD") received a broadcast from OVPD dispatch

---

[1] Likens was represented by counsel when he filed his motion on August 3, 2025. However, following a November 20, 2025 *Faretta* Hearing, Likens' Motion for Self-Representation was granted. (Doc. 52.) Attorney Saul Huerta has been appointed as his advisory/standby counsel. (*Id.*)

[2] In Likens' objections to the R&R, he requests the Court permit him to file supplemental objections once he receives full disclosure from the Government. (Doc. 72 at 2.) At the status conference on January 20, 2026, the Court granted in part his request. (Doc. 84.) Likens filed supplemental objections to the R&R, and the Government filed a response. (Docs. 91–92.)

that an anonymous 911 caller reported Likens was driving a vehicle with a suspended license. (*Id.* at 5–6.) Officer Brandstrom testified that the dispatchers independently verified Likens' license was in fact suspended. (*Id.* at 7, 50.)

Around 9:30 p.m. that evening, a second dispatch broadcast alerted that Likens was driving on a suspended license. (*Id.* at 7.) The second broadcast was an "Attempt to Locate" ("ATL") that included Likens' name, a description of the vehicle he was driving (a "homemade truck with a flatbed"), and his last seen location. (*Id.* at 7–8.) Officer Brandstrom testified that although the second broadcast did not show dispatchers independently verified Likens' suspended license as they had done with the first broadcast, it is his understanding that it would not have been possible for Likens to have his license reinstated in the short, after-business-hours timeframe from 7:00 p.m. to 9:30 p.m. (*Id.* at 15–16.) In any event, shortly after the second broadcast, Officer Brandstrom saw a vehicle matching the description and near the last seen location. (*Id.* at 11–12.) Officer Brandstrom positively identified Likens as the driver through the truck's open driver's side window because Officer Brandstrom had previously cited Likens for driving with a suspended license in April 2024. (*Id.* at 13, 30–31.) After identifying Likens, Officer Brandstrom then activated his emergency equipment and his body-worn camera and stopped Likens' vehicle for driving on a suspended license at approximately 9:49 p.m. (*Id.* at 14–17.)

Around 10:00 p.m., after confirming Likens' driver's license was suspended, Officer Brandstrom placed Likens under arrest for driving on a suspended license. (*Id.* at 17–18, 59.) At 10:03 p.m., Officer Brandstrom directed that the vehicle be towed because it is OVPD "practice and policy" to tow vehicles after arrests or if the vehicle presents a traffic hazard. (*Id.* at 18–19, 59.) Officer Brandstrom testified that because the vehicle was "on the side of Oracle Road at an uphill in a dark lit area" it would not have been safe to leave the vehicle there. (*Id.* at 19.) Other officers arrived at the scene, OVPD Officer Fletcher called the tow truck, and another officer conducted a canine sniff of the vehicle. (*Id.* at 19–20.) According to Officer Brandstrom's testimony, the officers then conducted an inventory search consistent with OVPD policy for vehicles that are stored or impounded.

1  (*Id.* at 28.) Officer Brandstrom further testified that he is familiar with the OVPD policy
2  504.5 on inventory searches that requires officers to conduct a "fair accounting and a fair
3  inventory of all items currently present in the vehicle at the time," including in closed or
4  locked containers. (*Id.* at 25–27.) During the inventory search, officers opened a secured
5  container in the bed of the truck and found an unregistered rifle and unregistered silencer
6  without a serial number. (*Id.* at 20–21; Doc. 3.) Thereafter, Likens was indicted on two
7  counts of possession of unregistered firearms and one count possession of a firearm without
8  a serial number in violation of 28 U.S.C §§ 5845(a), 5861(d), (i), 5871. (Doc. 3.)

9        On August 13, 2025, Likens moved to suppress the weapons asserting his Fourth
10 Amendment rights were violated when the officer stopped his vehicle without reasonable
11 suspicion and conducted an inventory search based on pretext. (Doc. 26.) On October 27,
12 2025, the Magistrate Judge held an evidentiary hearing on Likens' motion. (Doc. 39.) After
13 hearing evidence in the matter, the Magistrate Judge issued her R&R recommending that
14 Likens' Motion to Suppress be denied. (Doc. 66.)

15     **II.**    **Legal Standard**

16       A district court must "make a de novo determination of those portions" of a
17 magistrate judge's "report or specified proposed findings or recommendations to which
18 objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Crim. P. 59(b)(3) ("The district
19 judge must consider de novo any objection to the magistrate judge's recommendation.").
20 Any objection must be "specific" to the proposed findings and recommendations. Fed. R.
21 Crim. P. 59(b)(2). Failure to object to the findings and recommendations of the magistrate
22 judge "waives a party's right to review." *Id.*

23     **III.**    **Discussion**

24       Likens argues the R&R should not be adopted because its analysis "depends on
25 disputed chronology and dispatch-knowledge findings." (Doc. 72 at 1.) In so arguing,
26 Likens seeks the Court either grant his motion or decline to adopt the R&R and remand
27 "for a limited evidentiary hearing focused on: (a) dispatch/PSAP/CAD audit and event-
28 history data, (b) complete 911 and radio audio for Call 1 and Call 2, (c) native logs and

metadata necessary to resolve stop inception and claimed 'verification,' and (d) tow/impound/inventory chronology and policy compliance . . . ." (*Id.* at 2.) For the reasons discussed herein, Likens' objections are overruled, and his request for remand is denied.

### a. Officer Brandstrom had reasonable suspicion to stop Likens' vehicle.

Likens objects to the Magistrate Judge's finding that Officer Brandstrom had reasonable suspicion for the traffic stop. (*See* Doc. 72 at 4–6; Doc. 91 at 2–5.) He argues the evidence does not support a finding that dispatch independently verified his suspended driver's license before the stop. (Doc. 72 at 4; Doc. 91 at 3.) Specifically, Likens asserts the following evidence does not show the dispatcher verified his suspended license before the stop: the "CAD notes," radio log, call transcript, database query during the first call window, and radio traffic. (Doc. 91 at 3.) He argues that instead the time stamps show the verification did not occur until after the seizure. (Doc. 72 at 4.) Likens further emphasizes that the "CAD" and radio records do not reflect Officer Brandstrom was involved in the first call, and he argues that therefore Officer Brandstrom did not act on "collective knowledge." (Doc. 91 at 3.) In this vein, Likens argues Officer Brandstrom's time stamped activity show the R&R relied on an "[o]bjectively [i]mpossible" timeline, asserting he first marked "enroute" at 21:49:06, logged the traffic stop at 21:49:09, made his "first MDC query" at 21:49:38–39, and later made his first radio transmission. (Doc. 91 at 4.) He concludes these are not administrative errors but errors that are dispositive. (Doc. 72 at 6.) He further asserts that absent independent verification, the anonymous tip does not support reasonable suspicion. (Doc. 72 at 5; Doc. 91 at 3.)

Law enforcement officers may conduct an investigatory stop of a vehicle or person if they are aware of facts leading to a "reasonable suspicion" that criminal activity is afoot. *See United States v. Arvizo*, 534 U.S. 266, 273 (2002). "[R]easonable suspicion exists when an officer is aware of specific, articulable facts which, when considered with objective and reasonable inferences, form a basis for particularized suspicion." *United States v. Montero-Camargo*, 208 F.3d 1122, 1129 (2000) (quoting *United States v. Cortez*, 449 U.S. 411, 418 (1981)). "The reasonable-suspicion standard is not a particularly high threshold to reach."

1  *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013).

2  Upon review, the Court finds Officer Brandstrom had reasonable suspicion to conduct a traffic stop of Likens' vehicle. The first broadcast reported that Likens was seen driving with a suspended license, and Officer Brandstrom testified that dispatch reported that it had in fact confirmed Likens' license was suspended. (Doc. 45 at 7, 16, 50.) The second broadcast, less than three hours later, reported Likens was driving with a suspended license, and gave his name, a description of the vehicle he was driving, and his last seen location. (*Id.* at 7–8.) Officer Brandstrom received both broadcasts, and he saw a truck matching the description near the last seen location less than thirty minutes after the second broadcast. (*Id.* at 11–12.) After driving next to the truck, Officer Brandstrom identified Likens through the open driver's side window, as he had previously cited him for driving with a suspended license. (*Id.* at 13, 30–31.) Before activating his emergency lights, Officer Brandstrom ran a records check on Likens which displayed Likens' photo. (*Id.* at 14–15, 49–50.) Officer Brandstrom then pulled Likens over, confirmed his license was suspended, and placed him under arrest for driving on a suspended license. (*Id.* at 17–18.)

Here, the Court "must look at the 'totality of the circumstances,'" which includes dispatch's first broadcast confirming Likens' suspended license, the second broadcast describing the truck and the relevant location, Officer Brandstrom identifying Likens' in the truck, and the records check before the stop. *Valdes-Vega*, 738 F.3d at 1078 (quoting *Arvizu*, 534 U.S. at 273); *see also United States v. Cotterman*, 709 F.3d 952, 970 (9th Cir. 2013) ("It is not our province to nitpick the factors in isolation but instead to view them in the totality of the circumstances."). Importantly, Officer Brandstrom could reasonably rely on the OVPD dispatcher's first broadcast that Likens' driver's license was suspended.[3] *See*

---

[3] Likens also objects that Officer Brandstrom incorrectly testified this broadcast was coded as an ATL, when the records show it was coded as "Suspicious Activity." (Doc. 91 at 2.) Defendant argues characterizing the call as an ATL "materially inflates its legal significance by implying verified illegality and formal dissemination." (*Id.*) The R&R addressed this argument and found that a discrepancy in how the call was logged is an administrative error that is "not the type of conflict or contradiction that warrants rejection of [Officer Brandstrom's] testimony." (Doc. 66 at 4.) The Court agrees with the R&R and finds the coding of the first broadcast does not change the legal analysis. As such, Likens' objection is overruled.

*United States v. Fernandez-Castillo*, 324 F.3d 1114, 1118 (9th Cir. 2003) ("[T]he dispatcher's knowledge is properly considered as part of our analysis of reasonable suspicion."). Based on that broadcast and the totality of the circumstances, Officer Brandstrom was reasonable to suspect Likens was committing a crime as Arizona law prohibits a person from driving on a public highway while that person's driver's license is suspended. *See* Ariz. Rev. Stat. § 28-3473(A).

Moreover, even if the dispatcher had been mistaken as to the status of Likens' driver's license, Officer Brandstrom's reasonable and good faith belief of that fact could still support reasonable suspicion. *See United States v. Twilley*, 222 F.3d 1092, 1096 n.1 (9th Cir. 2000) ("A factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop." (citing *United States v. Wallace*, 213 F.3d 1216, 1220 (9th Cir. 2000))); *United States v. Dorais*, 241 F.3d 1124, 1131 (9th Cir. 2001) (finding the officers' mistake of fact that the rental car had been missing for more than forty-eight hours did "not defeat the officers' reasonable suspicion").

Finally, because the Court finds that Officer Brandstrom could have reasonably and in good faith relied on the dispatcher's first broadcast indicating a license check had been conducted, Likens' request to re-open the evidentiary hearing to address, in significant part, dispatch "audit and event-history data," the 911 calls, and "native logs and metadata" to confirm the dispatcher's "verification" is both unnecessary and irrelevant.[4] *See Wallace*, 213 F.3d at 1220.

As such, the Court finds the traffic stop was supported by reasonable suspicion. Likens' objections are overruled, and his request for remand for a "limited evidentiary hearing" is denied.

---

[4] Likens also seeks to re-open the evidentiary hearing to "focus on" "tow/impound/inventory chronology and policy compliance . . . ." (Doc. 72 at 2.) Likens provides no new basis as to why this additional information is relevant to whether reasonable suspicion existed to stop his vehicle or to his claim that the inventory search of his vehicle was a "pretext." At best, he simply renews his argument that an alternative to impoundment was available. (*Id.* at 7.) This Court concurs, however, with the Magistrate Judge that because the officers had a proper community caretaking purpose in towing the truck, they were not required to exercise their discretion in the way most favorable to Likens. (Doc. 66 at 5–6.)

### b. Officer Brandstrom's decisions to tow the vehicle and conduct an inventory search were valid.

Once a stop has been made, an inventory search is valid if it is conducted "in conformance with the standardized procedures of the local police department and in furtherance of a community caretaking purpose, such as promoting public safety or the efficient flow of traffic." *United States v. Torres*, 828 F.3d 1113, 1118 (9th Cir. 2016) (citing *United States v. Cervantes*, 703 F.3d 1135, 1141 (9th Cir. 2012)).

Defendant objects to the vehicle's impoundment and inventory search as unreasonable because a "less obtrusive caretaking option was immediately available." (Doc. 72 at 7.) Here, the truck was parked on an uphill slope in a dark area. (Doc. 45 at 19.) Officer Brandstrom reasonably determined the vehicle presented a traffic hazard, and, according to the community caretaking doctrine, he followed OVPD policy in conducting the inventory search before the vehicle was towed. *See United States v. Caseres*, 533 F.3d 1064, 1075 (9th Cir. 2008). As explained in the R&R, the OVPD officers were not required to address the traffic hazard posed by the vehicle in the manner most favorable to Likens. (Doc. 66 at 6.)

Likens also objects that the stop was unlawfully prolonged. (Doc. 72 at 6.) Likens was arrested about ten minutes after the stop was initiated. (*See* Doc. 45 at 12, 59.) The Court finds no factual basis to support a finding that the traffic stop was unlawfully prolonged.

As such, Likens' objections are overruled.[5]

### IV. Conclusion

The Court has reviewed the Magistrate Judge's R&R (Doc. 66), Defendant's objections (Doc. 72), the Government's response (Doc. 78), Defendant's supplemental

---

[5] Likens also objects to the indictment's marking him as a "fugitive." (Doc. 72 at 8.) However, as the indictment issued long after the stop and search at issue here, any objection relating to his "fugitive" status is irrelevant and thus overruled. Finally, Likens appears to broadly object that the evidence obtained was fruit of the poisonous tree. (*Id.*) While this objection is not specific, as required by Fed. R. Crim. P. 59(b)(2), the Court finds nonetheless that because the stop and inventory search were valid, the weapons discovered in the search were not tainted. *See Illinois v. Lafayette*, 462 U.S. 640, 644 (1983) (a valid inventory search is "a well-defined exception to the warrant requirement").

objections (Doc. 91), the Government's response (Doc. 92), Defendant's motion (Doc. 26), the parties' briefs (Docs. 29, 32, 44, 54–55), and the record. Upon a de novo review of the objected to portions of the R&R, and clear error review of the unopposed portions, the Court agrees with the Magistrate Judge's findings and adopts the R&R.

Accordingly,

**IT IS ORDERED** that Defendant's objections are **OVERRULED**. (Docs. 72, 91.)

**IT IS FURTHER ORDERED** that the Report and Recommendation is **ADOPTED.** (Doc. 66.)

**IT IS FURTHER ORDERED** that Defendant's Motion to Suppress is **DENIED**. (Doc. 26.)

Dated this 12th day of February, 2026.

*[signature]*

Honorable Angela M. Martinez
United States District Judge